## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PAULA OGURKIEWICZ, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br> v. <br><br> THE PROCTER & GAMBLE COMPANY, <br><br> Defendant. | Case No._____ <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

## **CLASS ACTION COMPLAINT**

Plaintiff Paula Ogurkiewicz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her Class Action Complaint against Defendant The Procter & Gamble Company ("P&G" or "Defendant"), alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, allege, upon information and belief and investigation of their counsel, as follows:

## **NATURE OF THE ACTION**

1. This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased Defendant's laundry detergent Tide purclean™ (hereinafter the "Product" or "Products").

2. Defendant marketed, labeled and sold the Product to consumers, including Plaintiff, with the representation that it was 100% plant-based or derived solely from plant-based ingredients.

3. Unbeknown to Plaintiff and Members of the Classes, and contrary to the representations prominently made on its label, the Product is derived, in part, from petroleum.

4. As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been and continue to be harmed, by purchasing a product under false pretenses and paying more for it than they otherwise would have, if at all.

5. Plaintiff and the Classes thus bring claims for unjust enrichment and seek restitution, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## PARTIES

6. Plaintiff, Paula Ogurkiewicz, is a citizen of the State of Illinois residing in the City of Burr Ridge, and is a Member of the Classes defined herein. She purchased the Products for her own use during the four years preceding the filing of this Complaint and most recently in August of 2020. Plaintiff Ogurkiewicz and Members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint. Plaintiff Ogurkiewicz and Members of the Classes would not have purchased the Product had it been accurately labeled.

7. Defendant, P&G, is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

9. The Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Products purchased by Plaintiff.

10. Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

11. P&G is an American multinational consumer goods corporation. The company reported annual revenue of more than $67 billion in 2019.[1]

12. One of the products in which Defendant specializes is laundry detergent. Defendant introduced its Tide laundry detergent in 1946[2] and it has been one of the most prominent brands in the laundry detergent business ever since.

13. Defendant sells a variety of laundry detergent products under the Tide brand, including the Product.

14. In recent years, consumers have become more eco-conscious when it comes to their laundry products. Indeed, according to the to the trade journal Perfumer & Flavorist, "green and eco-conscious cleaning continues to be popular" as "consumers are increasingly interested in the chemicals that are being used in laundry products and processes."[3]

15. Similarly, according to the independent research group Battelle:

> Consumer preference is driving increased interest in products that are more sustainable to manufacture and safer for the environment when released in wastewater, such as surfactants derived from natural oils instead of petroleum.[4]

---

[1] *Proctor & Gamble Company Profile*, Fortune, https://fortune.com/company/procter-gamble/fortune500/ (last visited Dec. 24, 2020).
[2] *About Us*, Tide, https://tide.com/en-us/about-tide/about-us (last visited Dec. 24, 2020).
[3] *Green Is Key in U.S. Laundry Chemical Market*, Perfumer & Flavorist (May 15, 2018), https://www.perfumerflavorist.com/fragrance/trends/Kline-Releases-Report-on-Laundry-Market-480117513.html.
[4] Battelle Staff, *The Future of Detergents: Top Trends Driving the Industry* (May 5, 2016), https://inside.battelle.org/blog-details/the-future-of-detergents.

16.     Another news outlet reported that, when it comes to detergents, more consumers "are seeking brands that are both effective and environmentally friendly."[5]

17.     That same report went on to note that "[i]n 2008, sales of green cleaners quadrupled to $64.5 million from five years earlier, according to market research by Mintel. Consumers' reasons for making the switch range from environmental to health and safety concerns."[6]

18.     Likewise, another independent study concluded that consumers "feel quite a bit better" about purchasing green products.[7]

19.     Seeking to capitalize on this trend, Defendant introduced the Product to consumers:



---

[5] Yvonne Zipp, *Environmentally Friendly Detergents: Are They For You?*, The Christian Science Monitor (Apr. 6, 2010), https://www.csmonitor.com/Environment/2010/0406/Environmentally-friendly-detergents-Are-they-for-you (last visited Dec. 24, 2020).
[6] *Id*.
[7] *Using Green Products Leads to a Warm Glow in Shoppers*, Science Daily (Dec. 5, 2019), https://www.sciencedaily.com/releases/2019/12/191205130605.htm (last visited Dec. 24, 2020).

4

20. As noted in the image above, Tide prominently labels the Product as "Plant Based".

21. The trusted Tide brand name is also overlaid on a green leaf further suggesting the Product is derived entirely from eco-friendly plant-based materials.

22. Tide further promotes the implication that the Product is derived entirely from eco-friendly plant-based materials by prominently labeling the Products as containing "0% dyes, phosphates, chlorine brighteners."

23. Likewise, the back label states "A Powerful Plant-Based Clean You Can Feel Good About:"



24. These representations further give the impression that the Product is derived entirely from eco-friendly plant-based materials.

25. Defendant further boasts that the Product is "Gentle on Skin," "Plant Based," "No Dyes," and "Formula Made with Renewable Electricity." These claims also give the impression that the Product is derived entirely from eco-friendly plant-based materials.

26. As a whole, P&G conveys the message to consumers, including Plaintiff, that the Product is derived entirely from eco-friendly plant-based materials.

27. P&G directs the representations that the Product is derived entirely from eco-friendly plant-based materials to consumers, like Plaintiff and the Members of the Classes, and P&G intends that Plaintiff and Members of the Classes read and rely on its representations.

28. However, contrary to these representations, the Product is made, in significant part, with cleaning aids derived from petroleum, leaving Plaintiff and Members of the Classes having paid a premium for a Product that failed to provide the promised benefits.

29. In particular, the "cleaning aids" utilized in the Product are Polyethyleneimines Alkoxylated. These cleaning aids are derived from petroleum—not plants.

30. Petroleum, also known as crude oil, is a naturally occurring, yellowish-black liquid found in geological formations beneath the Earth's surface. It is commonly refined into various types of fuels.[8]

31. Petroleum is considered a non-renewable resource.[9]

32. In 2019, petroleum accounted for 46 percent of the U.S.'s carbon dioxide emissions from fossil fuels.[10]

---

[8] *What is a Non-Renewable Resource?*, Corporate Finance Institute, https://corporatefinanceinstitute.com/resources/knowledge/other/non-renewable-resource/ (last visited Dec. 24, 2020).
[9] *Id.*
[10] *Energy and The Environment Explained: Where Greenhouse Gases Come From*, U.S. Energy Information Administration (last updated: Aug. 11, 2020), https://www.eia.gov/energyexplained/energy-and-the-environment/where-greenhouse-gases-comefrom.php#:~:text=Nearly%20half%20of%20U.S.%20energy,21%25%20came%20from%2

33. The environmental impact of the Petroleum Industry has been well documented. Burning oil releases carbon dioxide into the atmosphere, contributing to the warming of our planet.[11]

34. Therefore, the Product is not derived entirely from eco-friendly plant-based materials. To the contrary, it is derived, in significant part, from materials that are non-renewable and harmful to the planet.

35. Although Defendant's label contains a miniscule disclaimer indicating, in barely legible font, that the Product is only 75% biobased content, this disclaimer is flatly inconsistent with the visual images of the Product and the other more prominent and unqualified representations such as:

- "Plant Based"
- "A Powerful Plant-Based Clean You Can Feel Good About"
- "Plant Based Cleaning Agents"
- "Formula Made with Renewable Electricity"

36. As such, Defendant's marketing, advertising, and packaging of the Product is false and misleading.

37. Defendant's marketing, advertising, and packaging of the Product also runs afoul of the Federal Trade Commission recommendations set forth in the Guides for the Use of Environmental Marketing Claims ("Green Guides"), which advise companies to "use clear and

---

0burning%20coal (last visited Dec. 24, 2020).
[11] *The Problem With Oil: Global Warming*, Greenpeace, https://www.greenpeace.org/usa/global-warming/issues/oil/#:~:text=Burning%20oil%20releases%20carbon%20dioxide,dioxide%20emissions%20from%20fossil%20fuels (last visited Dec. 24, 2020).

prominent qualifying language that clearly conveys that the certification or seal refers only to specific and limited benefits."

38. Indeed, in August of 2020, P&G agreed to stop making these unqualified representations and conspicuously the limitations of the claims.

39. Defendant, a multi-billion-dollar company which has the resources to conduct its own testing, had no reasonable basis to believe the truthfulness and accuracy of its eco-friendly claims about the Product and/or knew or should have known that the claims about the Product was not accurate and that its labeling, advertising and/or marketing was false and misleading.

40. The only conceivable purpose for falsely and deceptively making these claims about the Product is to stimulate sales and enhance Defendant's profits by capitalizing on the consumer trend of "going green".

41. Indeed, Defendant surely understands that no reasonable consumer would have paid a premium for the Products if they knew they did not provide the promised benefits.

42. Consumers are particularly vulnerable to these kinds of false and deceptive labeling and marketing practices. Most consumers are unable to verify that products such as Defendant's are accurately labeled.

43. Because of Defendant's deceptive advertising practices, consumers were fraudulently induced to purchase and pay a premium the Products.

### *Plaintiff Relied Upon the Products' Label to Purchase and Use the Products*

44. Plaintiff Ogurkiewicz was herself a victim of Defendant's mislabeling of the Product.

45. On several occasions over the last four years, and most recently in August of 2020, Plaintiff Ogurkiewicz purchased the Product at Target in Willowbrook, Illinois.

8

46. Prior to purchasing the Product, Plaintiff Ogurkiewicz viewed the misrepresentations alleged herein and relied upon them.

47. In particular, Plaintiff Ogurkiewicz purchased the Products based on the belief that they were derived entirely from eco-friendly "Plant Based" materials.

48. Plaintiff Ogurkiewicz would not have purchased and used the Product had she known that it was made from petroleum, a non-renewable resource that is a substantial contributor to global warming.

49. Plaintiff is in the same Class as all other consumers who purchased Defendant's Product during the relevant time period. Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Product. Plaintiff and Class Members would have purchased other laundry detergents if they had not been deceived by the misleading and deceptive labeling and advertising of the Product by Defendant.

## CLASS ACTION ALLEGATIONS

50. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

51. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

> **National Class:** All persons within the United States who purchased the Product for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").
>
> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased the Product for personal consumption from the beginning of any applicable

limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[12]

**Illinois Sub-Class:** All persons in Illinois who purchased the Product for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Illinois Sub-Class").

52. Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family.

53. Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

54. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Classes number in the thousands to hundreds of thousands. The number of Members of the Classes is presently unknown to Plaintiff, but may be ascertained from

---

[12] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits both unfair and deceptive business acts and practices on the part of entities conducting business with consumers within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, *et seq.*) and Wisconsin (WIS. STAT. § 100.18, *et seq.*).

Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

56. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Members of the Classes and predominate over questions affecting only individual Members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

   a. Whether the Product is derived entirely from eco-friendly "Plant Based" materials, as conveyed on the label;

   b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

   e. Whether Defendant's actions violate the state consumer fraud statutes invoked below;

   f. Whether Plaintiff and the Members of the Classes were damaged by Defendant's conduct;

   g. Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members; and

   h. Whether Plaintiff and Class Members are entitled to injunctive relief.

57. Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

58. **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above.

11

Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

59. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

60. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

61. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as

labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

62. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### CAUSES OF ACTION

### COUNT I

### Violation of the State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

63. Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

64. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

65. Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the

Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

66. Defendant engaged in unfair and/or deceptive conduct as alleged herein.

67. Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

68. As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

69. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(In the Alternative to Count I and on behalf of the Illinois Sub-Class)**

70. Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

71. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purposes. 815 ILCS 505/11a.

72. Defendant engaged in unfair and/or deceptive business practices in the conduct of trade or commerce as alleged herein.

73. Defendant's conduct in marketing, advertising, packaging and/or selling the Products constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

74. Defendant intended that Plaintiff and each of the Members of the Illinois Sub-Class would rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

75. Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

76. Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, Members of the Illinois Sub-Class would not have purchased the Products had they been accurately marketed, advertised, packaged, and/or sold.

77. Plaintiff and Members of the Illinois Sub-Class have been directly and proximately damaged by Defendant's actions.

78. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Illinois Sub-Class have sustained damages in an amount to be proven at trial.

79. In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT III

### Unjust Enrichment
### (On Behalf of the National Class and the Illinois Sub-Class)

80. Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

81. Plaintiff brings this claim against Defendant on behalf of herself, the National Class, and the Illinois Sub-Class (the "Classes").

82. Plaintiff and the other Members of the Classes conferred benefits on Defendant by purchasing the Products.

83. Defendant received the benefits to the detriment of Plaintiff and the other Members of the Classes because Plaintiff and the other Members of the Illinois Sub-Class purchased a mislabeled product that is not what they bargained for and that did not provide the promised benefit.

84. Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other Members of the Illinois Sub-Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Illinois Sub-Class, because they would have not purchased the product had they known the true facts.

85. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Illinois Sub-Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Illinois Sub-Class for its unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Classes, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C. Ordering Defendant to pay actual damages to Plaintiff and the other Members of the Classes;

D. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Classes;

E. Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other Members of the Class;

F. Ordering Defendant to pay reasonable attorneys' fees and litigation costs, as allowable by law, to Plaintiff and the other Members of the Classes;

G. Ordering Defendant to pay restitution to Plaintiff and the other Members of the Classes;

H. Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

I. Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: January 4, 2021                                   Respectfully Submitted,


By: /s/ *Gary M. Klinger*
Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: (202) 429-2290
Fax: (202) 429-2294
gklinger@masonllp.com

Gary E. Mason
David K. Lietz
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW, Ste. 305
Washington, DC 20016
Phone: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com
dlietz@masonllp.com

*Attorneys for Plaintiff and the Classes*